LexisNexis®

**User Name:** John Palmer

**Date and Time:** Monday, June 16, 2025 12:46 PM EDT

**Job Number:** 255460662

## Document (1)

1. United States v. Sierra, 2012 U.S. Dist. LEXIS 97153

**Client/Matter:** -None-

**Search Terms:** "bill of particulars" AND "racketeering"

**Search Type:** Terms and Connectors

**Narrowed by:**

| Content Type | Narrowed by |
|---|---|
| Cases | Court: Federal > 1st Circuit1st Cir. - U.S. Dist. Cts.,Federal > 2nd Circuit2nd Cir. - U.S. Dist. Cts.,Federal > 3rd Circuit3rd Cir. - U.S. Dist. Cts.,Federal > 4th Circuit4th Cir. - U.S. Dist. Cts.,Federal > 5th Circuit5th Cir. - U.S. Dist. Cts.,Federal > 6th Circuit6th Cir. - U.S. Dist. Cts.,Federal > 7th Circuit7th Cir. - U.S. Dist. Cts.,Federal > 8th Circuit8th Cir. - U.S. Dist. Cts.,Federal > 9th Circuit9th Cir. - U.S. Dist. Cts.,Federal > 10th Circuit10th Cir. - U.S. Dist. Cts.,Federal > 11th Circuit11th Cir. - U.S. Dist. Cts.,Federal > D.C. CircuitU.S. Dist. D.C |

Caution
As of: June 16, 2025 4:46 PM Z

# *United States v. Sierra*

United States District Court for the Southern District of New York

July 11, 2012, Decided; July 11, 2012, Filed

11 Cr. 1032 (PAE)

**Reporter**
2012 U.S. Dist. LEXIS 97153 *; 2012 WL 2866417

UNITED STATES -v- LEONIDES SIERRA et al., Defendaots.

**Subsequent History:** Writ of habeas corpus denied *Sierra v. Hastings, 2013 U.S. Dist. LEXIS 14090 (S.D.N.Y., Feb. 1, 2013)*

Motion denied by, Sub nomine at *United States v. Mejia, 2013 U.S. Dist. LEXIS 91254 (S.D.N.Y., June 26, 2013)*

Motion denied by, Without prejudice, Sub nomine at *United States v. Urena, 989 F. Supp. 2d 253, 2013 U.S. Dist. LEXIS 131529, 2013 WL 5272933 (S.D.N.Y., Sept. 10, 2013)*

Motion granted by, Sub nomine at *United States v. Urena, 8 F. Supp. 3d 568, 2014 U.S. Dist. LEXIS 44017 (S.D.N.Y., Mar. 31, 2014)*

Motion granted by, in part, Motion denied by, in part, Sub nomine at *United States v. Urena, 2014 U.S. Dist. LEXIS 45683 (S.D.N.Y., Apr. 1, 2014)*

Motion denied by, Motion for new trial denied by *United States v. Urena, 73 F. Supp. 3d 291, 2014 U.S. Dist. LEXIS 131638 (S.D.N.Y., Sept. 18, 2014)*

Post-conviction relief denied at *United States v. Lopez-Cabrera, 2015 U.S. Dist. LEXIS 81167, 2015 WL 3880503 (S.D.N.Y., June 22, 2015)*

Later proceeding at *United States v. Cespedes, 2015 U.S. Dist. LEXIS 99796, 2015 WL 4597539 (S.D.N.Y., July 30, 2015)*

Post-conviction relief denied at *United States v. Urena, 2016 U.S. Dist. LEXIS 105055 (S.D.N.Y., Aug. 8, 2016)*

Decision reached on appeal by, Remanded by *United States v. Geraldo, 687 Fed. Appx. 101, 2017 U.S. App. LEXIS 6697, 2017 WL 1403148 (2d Cir. N.Y., Apr. 19, 2017)*

Affirmed by *United States v. Sierra, 933 F.3d 95, 2019 U.S. App. LEXIS 22914, 2019 WL 3488579 (2d Cir. N.Y., Aug. 1, 2019)*

Decision reached on appeal by *United States v. Sierra, 782 Fed. Appx. 16, 2019 U.S. App. LEXIS 23242, 2019 WL 3477105 (2d Cir. N.Y., Aug. 1, 2019)*

Post-conviction relief denied at, Certificate of appealability denied *Morel v. United States, 2019 U.S. Dist. LEXIS 198788 (S.D.N.Y., Nov. 14, 2019)*

Post-conviction proceeding at *Laford v. United States, 2019 U.S. Dist. LEXIS 199775 (S.D.N.Y., Nov. 15, 2019)*

Post-conviction relief denied at, Certificate of appealability denied *Lopez v. United States, 2020 U.S. Dist. LEXIS 17136 (S.D.N.Y., Jan. 30, 2020)*

Post-conviction relief denied at, As moot *United States v. Ciprian, 2020 U.S. Dist. LEXIS 17156 (S.D.N.Y., Jan. 31, 2020)*

Later proceeding at *United States v. Laford, 2020 U.S. Dist. LEXIS 127063 (S.D.N.Y., July 16, 2020)*

Later proceeding at *United States v. Lopez, 2020 U.S. Dist. LEXIS 131788 (S.D.N.Y., July 21, 2020)*

Motion denied by *United States v. Lopez, 2020 U.S. Dist. LEXIS 137887, 2020 WL 4450941 (S.D.N.Y., Aug. 3, 2020)*

Later proceeding at *United States v. Laford, 2020 U.S. Dist. LEXIS 141927 (S.D.N.Y., Aug. 5, 2020)*

Motion denied by *United States v. LaFord, 2020 U.S. Dist. LEXIS 144863, 2020 WL 4677595 (S.D.N.Y., Aug. 12, 2020)*

Post-conviction proceeding at *United States v. Geraldo, 2020 U.S. Dist. LEXIS 234794, 2020 WL 7240151 (S.D.N.Y., Dec. 9, 2020)*

Motion denied by *United States v. Strong, 2021 U.S. Dist. LEXIS 2993, 2021 WL 75660 (S.D.N.Y., Jan. 7, 2021)*

Motion denied by *United States v. Beltran, 2021 U.S. Dist. LEXIS 65767, 2021 WL 1249217 (S.D.N.Y., Apr. 5, 2021)*

Post-conviction proceeding at *Lopez v. United States, 2021 U.S. Dist. LEXIS 67712 (S.D.N.Y., Apr. 7, 2021)*

Motion denied by *United States v. Martinez, 2021 U.S. Dist. LEXIS 126410, 2021 WL 2821151 (S.D.N.Y., July 7, 2021)*

Post-conviction relief dismissed at, Certificate of appealability denied *United States v. Lopez-Cabrera, 2023 U.S. Dist. LEXIS 49857, 2023 WL 2612582 (S.D.N.Y., Mar. 23, 2023)*

Motion denied by *United States v. Sierra, 2024 U.S. Dist. LEXIS 43270, 2024 WL 1075408 (S.D.N.Y., Mar. 12, 2024)*

Request denied by, Post-conviction proceeding at, Sub nomine at *United States v. Morel, 2024 U.S. Dist. LEXIS 147217, 2024 WL 3858219 (S.D.N.Y., Aug. 16, 2024)*

Motion denied by, Sub nomine at *United States v. Cueto, 2024 U.S. Dist. LEXIS 176526 (S.D.N.Y., Sept. 30, 2024)*

Motion denied by *United States v. Morel, 2024 U.S. Dist. LEXIS 205542, 2024 WL 4751270 (S.D.N.Y., Nov. 12, 2024)*

Decision reached on appeal by *United States v. Cruz, 2024 U.S. App. LEXIS 29753 (2d Cir. N.Y., Nov. 22, 2024)*

**Prior History:** *People v. Martinez, 58 A.D.3d 870, 873 N.Y.S.2d 128, 2009 N.Y. App. Div. LEXIS 555 (N.Y. App. Div. 2d Dep't, Jan. 27, 2009)*

## Core Terms

murders, violent act, Indictment, conspiracy, ***racketeering***, notice, Identification, discovery, participated, deadline, recordings, disclose, Cooper, discovery material, disclosure, enterprise, pretrial, intends, directing, charges, defense counsel, pretrial notice, obligations, allegations, appreciates, preparation, extortion, custody

**Counsel:** **[*1]** For Leonides Sierra, also known as, Sealed Defendant 1, also known as, Junito, also known as, Junior, Defendant: Lawrence H. Schoenbach, Law Offices of Lawrence H. Schoenbach, New York, NY.

For Richard Gonzalez, also known as, Sealed Defendant 2, also known as, Webb, also known as, Webb Killa, Defendant: Sam A. Schmidt, Sam A. Schmidt Law Office, New York, NY.

For Jose Cruz, also known as, Sealed Defendant 3, also known as, Prostituto, also known as, Prosti, Defendant: David Arthur Ruhnke, LEAD ATTORNEY, Ruhnke & Barrett, Montclair, NJ; Chad Lathrop Edgar, Dawn Marcella Cardi, Dawn M. Cardi & Associates, New York, NY.

For Carlos Urena, also known as, Sealed Defendant 4, also known as, Salcedo, also known as, White Boy, Defendant: Gregory E. Cooper, Gregory E. Cooper, Esq., New York, NY; Richard M. Jasper, Jr, Law Office of Richard Jasper, New York, NY.

For Edwin Ciriaco, also known as, Sealed Defendant 5, also known as, Machete, also known as, Bobie, Defendant: Mitchell Joel Dinnerstein, Mitchell Dinnerstein, Esq, New York, NY.

For Anibal Ramos, also known as, Sealed Defendant 6, also known as, Moreno, Defendant: Bennett M. Epstein, New York, NY.

For Alfred Laford, also known as, Sealed **[*2]** Defendant 7, also known as, Sony, Defendant: Andres M. Aranda, Aranda & Guttlein, New York, NY.

For Juan Nunez, also known as, Sealed Defendant 10, also known as, Jesu Christo, Defendant: Curtis Jordan Farber, Curtis Farber, Esq., New York, NY; Kelley J. Sharkey, Kelley J. Sharkey, Esq., Brooklyn, NY.

For Christopher Johnson, also known as, Sealed Defendant 11, also known as, Chris, Defendant: David Andrew Gordon, David Gordon, Esq. (NYC), New York, NY.

For Donald Novas, also known as, Sealed Defendant 12, also known as, Oliver, also known as, Soca, also known as, Vale, also known as, Fish, Defendant: Charles Samuel Hochbaum, Charles S. Hochbaum, PC, Brooklyn, NY.

For Jose Feliciano, also known as, Sealed Defendant

13, also known as, Lito, Defendant: Joseph Aaron Grob, Goldberg & Rimberg, PLLC, New York, NY.

For Felix Lopez-Cabrera, also known as, Sealed Defendant 14, also known as, Suztancia, Defendant: Irving Cohen, Irving Cohen, Attorney-At-Law, New York, NY.

For Carlos Lopez, also known as, Sealed Defendant 15, also known as, Carlito, Defendant: Colleen Quinn Brady, Colleen Quinn Brady, Esq, New York, NY; Susan Gail Kellman, Law Offices of Susan G. Kellman, Brooklyn, NY.

For Jose Marmelejos, **[*3]** also known as, Sealed Defendant 16, also known as, Ochenta, Defendant: Richard Bruce Lind, Richard Lind Attorney at Law, New York, NY.

For Noel Acosta-Disla, also known as, Sealed Defendant 17, also known as, Fugitivo, Defendant: Sean Michael Maher, The Law Offices of Sean M. Maher, PPLC, New York, NY.

For Tomas Castillo, also known as, Sealed Defendant 18, also known as, Chobolo, also known as, Chobolito, Defendant: Jonathan Marks, Jonathan Marks P.C., New York, NY.

For Hugo Almonte, also known as, Sealed Defendant 19, also known as, Fufu, Defendant: Joyce Clemow London, Law Office of Joyce C. London, New York, NY.

For Cesar Almonte, also known as, Sealed Defendant 20, also known as, Bullet, Defendant: James Cohen, Fordham Law Clinic, New York, NY.

For Carlonell Paulino, also known as, Sealed Defendant 21, also known as, Pope, Defendant: Sharon Louise McCarthy, Kostelanetz & Fink, LLP, New York, NY.

For Ronald Peralta, also known as, Sealed Defendant 22, also known as, Romo, Defendant: Jason Errol Foy, Foy & Foy, LLC, Hackensack, NJ.

For Jose Castillo, also known as, Sealed Defendant 23, also known as, Smith, also known as, Jay Blanco, also known as, Daddy, Defendant: Donald Dennis Duboulay, **[*4]** Donald D. Duboulay Attorney At Law, New York, NY.

For Mark Martinez, also known as, Sealed Defendant 24, Defendant: Juan Alberto Campos, Sr, Juan A. Campos Esq., Bronx, NY.

For Jose Ballenilla, also known as, Sealed Defendant 25, also known as, Correa, Defendant: David B. Anders, Wachtell, Lipton, Rosen & Katz, New York, NY.

For Luis Beltran, also known as, Sealed Defendant 26, also known as, Gualey, Defendant: Heriberto Antonio Cabrera, Heriberto A. Cabrera, Brooklyn, NY; Paul Joseph McAllister, Paul J. McAllister, New York, NY.

For Luis Cabrera-Recio, also known as, Sealed Defendant 27, also known as, Nueve, also known as, Nuevecito, Defendant: Henry J. Steinglass, New York, NY.

For Loren Guzman, also known as, Sealed Defendant 28, also known as, Crispy, Defendant: George Robert Goltzer, George Robert Goltzer, New York, NY; Ying Stafford, Law Offices Ying Stafford, New York, NY.

For Melvin Amparo, also known as, Sealed Defendant 29, also known as, Flynt, Defendant: Matthew J. Kluger, Law Offices of Matthew J. Kluger, Tenafly, NJ.

For Jonathan Majdanski, also known as, Sealed Defendant 30, also known as, Indio, Defendant: John M Burke, John Burke, Brooklyn, NY.

For Miguel Strong, also known **[*5]** as, Sealed Defendant 31, also known as, Kiki, Defendant: Kafahni Nkrumah, Kafahni Nkrumah, Esq., New York, NY.

For Jose Barcarer, also known as, Sealed Defendant 32, also known as, Papotico, also known as, Basura, Defendant: Stewart Leigh Orden, Stewart L. Orden, White Plains, NY.

For Jose Geronimo-Figueroa, also known as, Sealed Defendant 33, also known as, Mocha, Defendant: Judith Vargas, The Law Office of Judith Vargas, New York, NY.

For Edgardo Ponce, also known as, Sealed Defendant 34, agent of, Tito, Defendant: Kenneth Alan Paul, Law Office of Kenneth A. Paul, New York, NY.

For Michael Delacruz, also known as, Sealed Defendant 35, also known as, 40, Defendant: Anthony L. Ricco, Law Office of Anthony L. Ricco, New York, NY; Christopher Booth, Lipman & Booth LLP, New York, NY.

For David Patino, also known as, Sealed Defendant 36, also known as, Bori, also known as, Chingo, Defendant: Eric Mark Sears, LEAD ATTORNEY, Law Office Eric Sears, P.C., New York, NY.

For Eduardo Holguin, also known as, Sealed Defendant 37, also known as, Baston, Defendant: Richard Harris Rosenberg, Richard H. Rosenberg, Attorney At Law, New York, NY.

For Ronny Evangelista, also known as, Sealed Defendant 38, Defendant: **[*6]** Marlon Geoffrey Kirton, Marlon G. Kirton, P.C., New York, NY.

For Luis Cabrera, also known as, Sealed Defendant 39,

also known as, Bling Bling, Defendant: Lawrence A. Dubin, Goldberger & Dubin, P.C., New York, NY.

For Mr. Carlos Rodriguez, also known as, Sealed Defendant 40, Defendant: Joel Mark Stein, Joel M. Stein, Esq, New York, NY.

For Henry O. Pena, also known as, Sealed Defendant 41, also known as, Melmo, Defendant: Alice L Fontier, LEAD ATTORNEY, Law Offices of Joshua L. Dratel, P.C., New York, NY.

For Dave McPherson, also known as, Sealed defendant 42, Defendant: Francisco Celedonio, Law Office of Francisco E. Celedonio, New York, NY; Pierre Sussman, Pierre Sussman, Esq., P.C., New York, NY; Richard John Ma, The Law Offices of Ma & Park, PLLC, New York, NY.

For Vance Hill, also known as, Sealed Defendant 43, also known as, Shata, Defendant: Megan Wolfe Benett, Kreindler & Kreindler, New York, NY.

For Greydin Liz-Castillo, also known as, Sealed Defendant 44, also known as, Pollito, Defendant: Sam Talkin, Sam Talkin; Sanford N. Talkin, Talkin, Muccigrosso & Roberts, New York, NY.

For Nelson Jorge-Martinez, also known as, Sealed Defendant 45, also known as, Chico Chico, Defendant: Evan **[*7]** T. Barr, LEAD ATTORNEY, Alejandro Gabriel Rosenberg, Steptoe & Johnson, LLP (NYC), New York, NY.

For Luis Saladin, also known as, Sealed Defendant 46, also known as, King, Defendant: John Francis Kaley, Doar, Rieck, Kaley & Mack, New York, NY.

For Christopher Robles, also known as, Sealed Defendant 47, also known as, Dorita, Defendant: Patrick Joyce, Patrick Joyce, Esq.; Patrick James Joyce, S/A/A, New York, NY.

For Joseph Hernandez, also known as, Sealed Defendant 48, Defendant: Frank Handelman, Law Offices of Frank Handelman, New York, NY.

For Jonathan Evangelista, also known as, Sealed Defendant 49, Defendant: Michael Steven Schachter, Willkie Farr & Gallagher LLP (NY), New York, NY.

For Henry Paulino, also known as, Sealed Defendant 50, also known as, Bam Bam, Defendant: Louis R. Aidala, Louis R. Aidala, New York, NY.

For USA, Plaintiff: Rachel Maimin, LEAD ATTORNEY, United States Attorney Office, SDNY, New York, NY; Sarah Rebecca Krissoff, LEAD ATTORNEY, U.S. Attorney's Office, White Plains, White Plains, NY; Jessica Ortiz, Nola Breglio Heller, U.S. Attorney's Office, SDNY (St Andw's), New York, NY.

**Judges:** Paul A. Engelmayer, United States District Judge.

**Opinion by:** Paul A. Engelmayer

## Opinion

MEMORANDUM & ORDER

PAUL A. ENGELMAYER, **[*8]** District Judge:

This Memorandum and Order discusses and clarifies the Court's Order, made from the bench during the June 13, 2012 pretrial conference in this case, directing the Government to disclose the murders or other acts of violence in which, at trial,-it will allege that one or more defendants participated.

By way of background, during colloquy at the June 13 conference, the Court directed the Government to identify, as to each defendant, the acts of violence, including murders, in which it will contend that that defendant participated (the "Identification Order"). *See* 6/13/12 Tr. at 75-79. Two days later, during the June 15, 2012 pretrial conference, the Government represented that it was consulting internally as to whether the Identification Order conflicted with *Federal Rule of Criminal Procedure 6(e)*, relating to Grand Jury secrecy, and that the Government planned to make a submission on that point to the Court the following week (*i.e.*, the week of June 18-22). *See* 6/15/12 Tr. at 29. On July 3, 2012, the Government submitted a letter to the Court, asking the Court to reconsider the Identification Order. First, it argued, the Identification Order violated *Rule 6(e)*. **[*9]** Second, it argued, the Court's articulation of the Government's obligations under *Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)*, with respect to these acts of violence imposed obligations that exceed those imposed by *Brady. See* Government's Letter of July 3, 2012 ("Gov't Letter") at 2-7.

On July 5, 2012, Gregory E. Cooper, Esq., counsel for defendant Carlos Urena, submitted a letter opposing the Government's application on the merits. He argued that the Government had missed the deadlines it had set for its reconsideration letter and for compliance with the Identification Order. *See* Gregory Cooper Letter of July 5, 2012 ("Cooper Letter") at 1-4. On July 9, 2012,

Sharon McCarthy, Esq., counsel for defendant Carlonell Paulino, submitted a letter arguing that the lack of specificity in the Indictment's ***racketeering*** conspiracy charge requires the Government to particularize the charges against the defendants. *See* Sharon McCarthy Letter of July 9, 2012 ("McCarthy Letter") at 2. The Court has received numerous letters from other defense counsel joining in the letters submitted by Mr. Cooper and/or Ms. McCarthy.

The Court's analysis of the issues presented is as follows.

1. Context: A paramount goal **[*10]** of the Court in managing this case, including rigorously supervising the process of discovery and pretrial disclosure, is to ensure that the defendants obtain a fair trial under the challenging circumstances presented.

There are 50 defendants charged in the superseding Indictment, SI 11 Cr. 1032 (PAE), in this case (the "Indictment" or "Ind't"). In its lead count, the Indictment charges all 50 defendants in a common ***racketeering*** conspiracy, in violation of *18 U.S.C. § 1962(d)*. The Indictment alleges that the conspiracy was committed in connection with an enterprise consisting of the Bronx Trinitarios Gang (the "BTG"), which it identifies as a "criminal organization whose members and associates engaged in, among other things, narcotics trafficking, attempted murder, and murder." Ind't ¶ 1. As alleged, the ***racketeering*** conspiracy spanned the period between at least 2003 and December 2011 (Ind't ¶ 7); its purposes included "[preserving the power of the enterprise and its members and associates through murder, attempted murder, other acts of violence, and threats of violence" (Ind't ¶ 5(b)); and the means and methods employed by the BTG's members and associates included "committ[ing], conspir[ing] **[*11]** to commit, and attempting] to commit acts of violence, including murder, to protect and expand the enterprise's criminal operations" (Ind't ¶ 6(a)). As Ms. McCarthy notes, the Indictment is framed in highly general terms. *See* McCarthy Letter at 2. Although it refers generically to murders and other acts of violence, the Indictment does not identify any particular murder or other act of violence during the eight-plus year duration of the ***racketeering*** conspiracy, let alone attribute any murder or act of violence to any particular defendant. Nor do the other three counts in the Indictment specify such acts.[1]

There is also an extraordinary volume of discovery in this case. As represented by the Government at the initial pretrial conference, it includes: (1) wiretaps on six telephones for eight months in 2011, recording approximately 30,000 calls involving the Bronx faction of the **[*12]** Trinitarios gang; (2) wiretaps on two telephones for four months in 2008-2009, recording another approximately 30,000 calls involving the Manhattan faction of the Trinitarios gang; (3) wiretaps on another telephone from 2005, recording hundreds of calls; (4) numerous prison calls from state prisons involving defendants, prison correspondence, and visitor logs; (5) footage from four pole cameras, which were in place 24 hours a day for months at a time, and which constitute "terabytes of data"; (6) surveillance videos and photographs of subjects of the investigation; (7) body wire recordings of defendants made by confidential sources; (8) proceeds of search warrants of approximately 22 locations, and associated materials; (9) records of more than 80 undercover purchases of narcotics and firearms from members of the BTG, and associated audio and video recordings; (10) "complaint reports and associated discovery material from numerous violent acts alleged to be part of the ***racketeering*** conspiracy that's charged here," including "approximately 20 attempted murders and ... countless assaults"; (11) downloads from social media sites reflecting defendants' membership in the BTG; (12) gang **[*13]** records, including lists of rules, handbooks, and membership lists; and (13) discovery specific to each defendant, including relating to prior arrests and prosecutions. *See* 12/12/11 Tr. at 9-14,

Under these circumstances, various challenges are presented to assuring a fair trial. One is to ensure that discovery is made available to the defense in a timely and orderly fashion. The Court appreciates the Government's attentiveness to its discovery obligations to date, and the organized and vigorous efforts of both the Government and the coordinating discovery attorneys to make this discovery available to the defense promptly and in a user-friendly fashion. The Court has particularly appreciated the efforts of all concerned to assure that discovery materials, which are overwhelmingly in electronic format, are promptly and meaningfully reviewable by the defendants, the vast

[1] These, respectively, allege narcotics conspiracy, in violation of *21 U.S.C. § 846*; the use, carrying, and possession of firearms in connection with the charged ***racketeering*** conspiracy, in violation of *18 U.S.C. §§ 924(c)(1)(A)(iii)* and *2*; and firearms trafficking, in violation of *18 U.S.C. §§ 922(a)(1)(A)* and *2*.

majority of whom are in custody pending trial.[2]

2. The Purposes Served by the Court's Identification Order: Merely furnishing discovery material to the defense in an organized and timely fashion, however, is not enough to assure the defense an adequate opportunity to prepare for trial in this case. Given the breadth and the lack of definition of the ***racketeering*** conspiracy charge as set out in the Indictment, it is imperative that the defense receive meaningful and concrete pretrial notice as to which murders and other acts of violence the Government will contend at trial were perpetrated in the course of the ***racketeering*** conspiracy. It is also imperative that each defendant receive meaningful and concrete pretrial notice as to the particular murders and other acts of violence in which the Government will contend at trial that that defendant participated.

Ample pretrial notice of these matters is important for several **[*15]** reasons. First, as a practical matter, such notice is necessary to give the defense meaningful guidance, in preparing for trial, as to what to look for within the mountain of discovery materials, including voluminous Title III recordings and applications, pole camera video footage, consensual recordings, and materials relating to violent acts that were the subject of prior arrests. Without notice as to the specific murders and acts of violence in which the Government will claim a defendant was complicit, defense counsel's review of these materials will have limited efficacy. Simply put, some point of reference is needed to make this review effective.

Further, to have utility, such notice must be given enough in advance to enable the defense to review the discovery materials meaningfully for items germane to the murders or acts of violence in question. Notice on the eve of trial, or close to it, as to murders or violent acts in which a defendant will be alleged to be complicit is likely to be inadequate, particularly for defendants whom the Government may claim were complicit in more than one murder or violent act. It simply cannot be assumed that the process of searching voluminous **[*16]** discovery materials for potentially relevant material as to a particular murder or violent act will be quickly accomplished. Some discovery materials (*e.g.*, the pole camera videos) are not text-searchable; and other materials (*e.g.*, the wiretaps and other forms of audio recordings) may contain statements or other evidence the relevance of which is circumstantial or emerges only upon notice of the particular murders or other violent acts in which the Government will argue that the defendant participated.

Meaningful notice of particular murders or violent acts in which the Government will allege a defendant participated is also necessary to enable counsel for each defendant to mount an independent pretrial investigation, beyond reviewing the materials contained in government-produced discovery. It cannot be assumed that the defense's preparation for trial will be limited to review of Government-produced discovery materials, no matter how substantial. To choose but one example, where the Government is able to fix a date or date range for a particular murder or other violent act, defense counsel may wish to investigate independently whether an alibi defense might be available to his or **[*17]** her client as to that murder or other violent act. But, until the Government has come forward and identified the specific murders or other violent acts in which it will contend at trial the defendant was complicit, the defense is effectively incapacitated from pursuing that line of defense investigation.

As a practical matter, meaningful advance notice of murders or other acts of violence is also important because the defendants in this case (almost all of whom have court-appointed counsel) almost all have legal teams of quite limited size. This is not a case in which defense counsel have a large team of lawyers and legal assistants to dispatch on short notice to review the discovery materials for items relevant to particular acts of violence, or to mount an independent investigation of such claims. Defense counsel are, further, largely solo practitioners or lawyers at small firms who almost certainly will have other commitments competing for their attention in the months and weeks leading up to trial, which may impinge on their ability to review and analyze discovery potentially bearing on these acts, or to independently investigate them. *Cf.* *United States v. Rueb, No. 00-cr-91, 2001 U.S. Dist. LEXIS 943, 2001 WL 96177, at *8 (S.D.N.Y. Feb. 5, 2001)* **[*18]** (noting, in course of granting motion for witness list, that defense

---

[2] Also to assure a fair trial, the Court has bifurcated the case into two tracks - Group A defendants, whom the Government intends to try on the current Indictment without seeking a superseding Indictment, and Group B defendants, as to whom it is considering adding charges, **[*14]** including substantive charges associated with murders, attempted murders, or assaults in aid of ***racketeering***. *See* Government Letter of May 14, 2012 at 2. Further, as the Court has advised counsel at various pretrial conferences, it will limit the number of defendants tried at one time to no more than approximately five.

counsel was court-appointed and had "limited resources" with which to review government discovery). Meaningful advance notice of the murders or other acts of violence that the Government will allege at trial is, therefore, important to avoid the need for an adjournment of the trial date, and/or to avoid unnecessary delays during trial.

Notice of murders or other acts of violence materially in advance of trial may also permit individual defendants and their counsel to make an informed assessment as to the wisdom of going to trial as opposed to attempting to negotiate a disposition.

Finally, under the circumstances of this case — where the large majority of defendants have been detained pending trial, and where the first trial date (January 7, 2013) has been set in part based on the extraordinary volume of discovery which the defense has received — it is especially appropriate that the defense be given, sooner rather than later, the tools necessary to usefully digest this discovery. Notice of the specific murders and other violent acts against which a defendant must be prepared to defend at trial is one critical such **[*19]** tool.

These are the reasons the Court, in the exercise of its discretion and its supervisory authority to assure that "fair standards of procedure are maintained," *United States v. Ming He, 94 F.3d 782, 792 (2d Cir. 1996)*; *see also* *United States v. Hasting, 461 U.S. 499, 505, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983)*, has directed the Government to notify the defense, substantially in advance of trial, of the murders or other acts of violence in which, it will argue at trial, a particular defendant participated. In ordering the Government to provide such notification, the Court has been particularly mindful of the Second Circuit's admonition that "[w]ith the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of ***racketeering*** activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." *United States v. Davidoff 845 F.2d 1151, 1154 (2d Cir. 1988)*.

In *Davidoff*, the defendant was charged with a seven-year RICO conspiracy scheme committed through various extortion schemes. The district court had declined to direct the Government **[*20]** to specify, prior to trial, any extortion schemes beyond those specified in the Indictment, and at trial Davidoff was "confronted with evidence of extortions aimed at entirely different companies." *Id*. Reversing the conviction, the Second Circuit held:

> Though we agree with the Government that even in a RICO case it is not obliged to disclose before trial all of its evidence, we believe the trial judge exceeded his discretion in this RICO prosecution by denying a ***bill of particulars*** identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove. *Cf.* *United States v. Bortnovsky, [820 F.2d 572, 574 (2d Cir. 1987)]*. We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made at trial.

*Id.* The same logic counsels here in favor of meaningful pretrial disclosure of the murders and acts of violence which the **[*21]** Government will reference or seek to establish at trial. *See also* *Bortnovsky, 820 F.2d at 574-75* (reversing conviction where district court failed to granted a ***bill of particulars*** "which was vital to [defendants'] understanding of the charges pending and to the preparation of a defense"); *cf.* *United States v. Barnes, 158 F.3d 662, 665*'(2d Cir. 1998) ("Since the indictment provided not a shred of detail, the defendant was entitled to be otherwise apprised of the conduct that he was alleged to have undertaken in the furtherance of this multi-faceted, if not multiple, conspiracy.").

3. The Government's Arguments With Respect to the Identification Order:

a. Grand Jury secrecy. In its letter seeking reconsideration of the Identification Order, the Government principally argues that the Court's order would require the Government to breach Grand Jury secrecy, in violation of *Rule 6(e)*. *See* Gov't Letter at 2-6. The Court intended nothing of the sort. To be clear, the Court was not, and is not, directing the Government to disclose any matters occurring before the Grand Jury. Instead, the Court was, and is, directing the Government to identify meaningfully before trial, those murders and other **[*22]** acts of violence — regardless whether or not evidence relating to those murders or violent acts was presented to the Grand Jury — that it intends to reference or establish at trial, and to identify the defendants whom it will contend participated in particular murders or other acts of violence. As the Government elsewhere acknowledges, it commonly has

made such disclosures in other ***racketeering*** conspiracy cases, including in the form of what it terms an "enterprise letter." *See* Gov't Letter at 7-8 (listing numerous examples). The Government has, further, represented in this case that it has informally notified various defense counsel of murders or violent acts in which it believes their clients participated. The case law relating to Grand Jury secrecy on which the Government relies is, therefore, inapposite.

In fairness to the Government, having reviewed the transcript of the June 13 conference, it is apparent to the Court that its explanation as to what it was directing the Government to disclose was not nearly clear enough. The Court takes responsibility for creating confusion on this point, which may well have given rise to the Government's misapprehension that the Court was directing **[*23]** it to disclose matters occurring before the Grand Jury. Specifically, in the same colloquy in which it directed the Government to disclose the murders or acts of violence that it intends to reference or establish at trial, the Court also discussed its May 30, 2012 Order directing the Government to produce under *Federal Rule of Criminal Procedure 16* the "documents and objects" relating to the murders or other acts of violence about which the Grand Jury heard evidence before it returned the Indictment (the "May 30 Order"); and the Court proceeded to use the murders and acts of violence addressed by the May 30 Order to illustrate its point about the need for pretrial notice. *See* 6/13/12 Tr. at 77. However, these two subjects (*Rule 16* discovery, and the Court's directive that pretrial notice be made of murders and violent acts which the Government will reference at trial) are distinct; and for clarity's sake, the Court should have addressed them distinctly to avoid confusion. The Court proceeds to do so now.

The May 30 Order resolved a dispute between the parties as to the application of *Rule 16* to this case. As relevant here, the Court held that documents and objects relating to the murders **[*24]** and acts of violence about which the Grand Jury heard testimony before returning the Indictment are presumptively material. This, the Court held, requires the Government either to produce those documents and objects promptly to the defense, or to raise a claim with the Court that materials as to a particular murder or act of violence are not material. *See* 5/30/12 Order at 3.[3] At the June 13 conference, the Government advised the Court that more than 35 such acts of violence were presented to the Grand Jury, 17 with a "specific date and time," *see* 6/13/12 Tr. at 70; and in its July 3 letter, the Government advised the Court that it would meet the July 3 deadline set at that conference for production of all *Rule 16* materials in its possession, custody, or control regarding these more than 35 acts. *See* Gov't Letter at 1 n. 1. The Court appreciates the Government's diligence in complying with this Order. The Court also appreciates the Government's recognition of its continuing discovery obligations as new materials responsive to *Rule 16* come into its possession, custody, or control.

At trial, however, **[*25]** the Government will not be cabined by its Grand Jury presentation in the evidence it offers to establish the ***racketeering*** conspiracy count. Although the Government may well seek at trial to establish all or most of the more than 35 murders or other violent acts as to which it presented evidence to the Grand Jury, it is not obligated, in attempting to prove that count, to replicate the proof offered before the Grand Jury. *See, e.g., United States v. Rigas, 490 F.3d 208, 228 (2d Cir. 2007)* (citing *United States v. Heimann, 705 F.2d 662, 666 (2d Cir. 1983))*. That is because the Indictment does not charge any defendant, either substantively or in connection with the ***racketeering*** conspiracy count, with any particular murder or act of violence For various reasons - strategic, evidentiary, or otherwise — the Government may choose to focus its case at trial on a subset of those more than 35 acts. Nor will the Government be limited, in attempting to establish that count, to the acts about which the Grand Jury heard testimony. *See United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009)*; *cf. United States v. Butler*, 351 F. "Supp. 2d 121, 134 (S.D.N. Y. 2004). To the extent that additional **[*26]** murders or other acts of violence probative of the ***racketeering*** conspiracy, come to its attention, *e.g.*, through proffers of cooperating witnesses, the Government is at liberty to establish such acts, subject, of course, to the Federal Rules of Evidence, and the standards of fair notice addressed herein.

The Court's Identification Order with respect to pretrial notice of murders and other acts of violence thus is neither limited nor defined by the murders or other acts of violence about which the Grand Jury heard testimony and which the Court has held presumptively material for the purposes of *Rule 16* discovery. The Identification Order is instead aimed at assuring that the defense has adequate notice of the specific murders and other violent acts that the Government intends to reference or

[3] The Government has not brought any claim of non-materiality to the Court's attention.

establish at trial, whether or not they were presented to the Grand Jury, so as to assist the defense's trial preparation and afford the defendants fair notice.

b. Brady v. Maryland. In light of the Court's clarification of its Identification Order, the Government's expressed concern with respect to the application of *Brady v. Maryland* would appear to be moot. The Government's concern had been that **[*27]** it is premature to require it to produce exculpatory evidence as to murders or other acts of violence referenced in the Grand Jury but which it was continuing to investigate and as to which it has not brought charges. *See* Gov't Letter at 6-7. As to murders or other acts of violence that are neither referenced in the Indictment nor ones which the Government intends to reference at trial with respect to a particular defendant, the Court agrees, as a general proposition, with the Government: If a defendant is nowhere alleged and will nowhere be argued to have participated in a particular murder or other violent act, evidence of his non-participation in that act is not inherently exculpatory.[4]

However, once the Government has determined to assert at trial as evidence of the ***racketeering*** conspiracy that a particular defendant participated in a murder or act of violence, the Government has a clear obligation, under *Brady*, to disclose evidence tending to exculpate that defendant of participation in that act. The *Brady* obligation as it relates to particular murders or acts of violence, thus, arises not just from the presence or not of an express claim in the Indictment relating to such an act; it is also triggered, in the context of this case, by the Government's determination to claim at trial that a defendant participated in a murder or act of violence. *See generally* *Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)* (analysis of materiality under *Brady* turns on whether, in the absence of disclosure, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); *United States v. Coppa, 267 F.3d 132, 135, 140 (2d Cir. 2001)*. The Court is confident **[*29]** that the Government appreciates this obligation. *See* 6/13/12 Tr. at 73-78 (colloquy between Court and AUSA Maimin).

c. The forthcoming Group B superseders. The Government has represented that it plans to supersede the present Indictment to add charges against the "Group B" **[*30]** defendants with respect to specific murders and/or acts of violence. The Court has set a deadline of December 14, 2012 for the return of such charges in this case. So that the parties are clear, the prospect of a superseding Indictment does not diminish the Government's obligation, with respect to the ***racketeering*** conspiracy charge in the present Indictment, to disclose to the Group B defendants the murders or other acts of violence which the Government intends to reference at trial. Most of the Group B defendants are presently in custody pending trial, based on the present charges, including ***racketeering*** conspiracy. It is appropriate that their counsel, too, have prompt notice as to the murders or other acts of violence which the Government intends to reference at trial with respect to their participation in that conspiracy, so that counsel can use this time productively to prepare to defend against these allegations.

4. Mr. Cooper's Arguments as to Missed Deadlines: Mr. Cooper argues that the Government has missed a July 3 deadline set by the Court for the disclosures required under the Court's Identification Order. *See* Cooper Letter at 1-2. That is incorrect. At the June 13 conference, **[*31]** the Court set a July 3 deadline for the Government to provide the defense with *Rule 16* material in its possession, custody, and control relating to the murders or other acts of violence about which the Grand Jury testimony. The Government has met that deadline. However, the Court did not set a deadline for the Government to disclose which defendants it planned to argue at trial had participated in particular murders or acts of violence. The Court addresses *infra* a timetable for such disclosures.

Mr. Cooper also notes that the Government had promised, at the June 15 conference, that its request for reconsideration of the June 13 Identification Order would be made the following week (the week of June 18-22), but that the Government's letter was not, in fact, submitted until July 3. *See id*. at 1. On that point, Mr. Cooper is correct — and the Court had assumed, when no such letter was forthcoming that week, that the Government had decided not to seek reconsideration of its order. The Court is fully aware of the burdens that this case imposes on all counsel, but expects counsel in

---

[4] To be sure, there may be particular circumstances under which a *Brady* obligation does exist with regard to evidence relating to a murder or other act of violence in which the Government is not accusing a defendant in participating. For example, disclosure under *Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)*, **[*28]** would be merited if a Government trial witness originally accused the defendant of participating in that murder or other act of violence and then changed his or her story to deny such participation.

the future to comply with their representations as to the timing of submissions, or to notify the Court of **[*32]** its inability to do so.

5. Mechanics and Timing of Disclosure Pursuant to the Identification Order: The Government proposes that, in the event of a court-ordered disclosure of murders and other violent acts, it make such disclosure in the form of a RICO "enterprise letter" to the defense. That approach is sensible. Such letters have been productively utilized in numerous ***racketeering*** cases in this District, as a means of particularizing the allegations in an indictment or the evidence the Government intends to introduce at trial. *See, e.g.,* *United States v. D'Amico, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010)*; *see also* *United States v. Boyle, No. SI 08-cr-534, 2009 U.S. Dist. LEXIS 63374, 2009 WL 2032105, at *5 (S.D.N.Y. July 9, 2009)*; *United States v. Palermo, No. 99-cr-l 199, 2001 U.S. Dist. LEXIS 1855, 22001 WL 185132, at *5 (S.D.N.Y. Feb. 26, 2001)*.[5]

As to the timing of the enterprise letter, the Government **[*33]** represents that it "typically would not provide such a letter until approximately two months in advance of trial." Gov't Letter at 7. For the reasons discussed above, however, this is not a typical case. And the superseding Indictment in this case was returned on December 5, 2011, and unsealed, and the majority of the defendants, arrested, on December 7, 2011, more than seven months ago. The Court accordingly directs the Government to provide an enterprise letter to the defense, as the Government has alternatively proposed, by August 1, 2012. That letter is to identify, with respect to each defendant, the murders or other violent acts in which the Government presently plans to contend at trial that that defendant participated.

The Court is mindful of the Government's representation that it continues to proffer witnesses and to develop evidence of additional murders and acts of violence probative of the ***racketeering*** conspiracy. The Court will not, at this time, limit the Government's ability to augment the list of murders or acts of violence that it intends to establish at trial. The Court authorizes the Government to supplement its enterprise letter by August 31, 2012, two weeks before **[*34]** the deadline on which pretrial motions by the Group A defendants are due. The August 31 deadline is intended to enable counsel for the Group A defendants to incorporate the Government's most recent identification of such murders or acts of violence in its consideration of potential pretrial motions. *See, e.g.,* *Bortnovsky, 820 F.2d at 574* (noting that ***bill of particulars*** may not be required where information necessary to "enabl[e] defendant to prepare for trial" and "to prevent surprise" is provided either "in the indictment or in some acceptable alternative form"); *Barnes, 158 F.3d at 665-66* (citing *Bortnovsky* and upholding denial of ***bill of particulars*** where Government had supplied the defense with "extensive additional information concerning their alleged involvement in the charged offenses"); *D'Amico, 734 F. Supp. 2d at 335* (denying request for particulars as to RICO conspiracy count where Government's enterprise letter had "specifie[d] a considerable number of supplementary facts concerning the predicate acts underlying the RICO count" and thereby furnished the defendant with "sufficient notice of the charges against him so that he can adequately prepare for trial"); *Boyle, 2009 U.S. Dist. LEXIS 63374, 2009 WL 2032105, at *5*; **[*35]** *Palermo, 2001 U.S. Dist. LEXIS 1855, 2001 WL 185132, at *5*.

Following August 31, 2012, the Government may augment the list of murders or other acts of violence that it intends to reference or establish at the trials of the Group A defendants, but only upon a showing of good cause.[6] At the next pretrial conference as to the Group A defendants, the Court will entertain argument as to a firm deadline after which additional murders or acts of violence may no longer be added.

SO ORDERED.

/s/ Paul A. Engelmayer

Paul A. Engelmayer

United States District Judge

Dated: July 11, 2012

New York, New York

**End of Document**

[5] At the Court's request, the Government furnished numerous examples of enterprise letters prepared in earlier cases. The Court's review of these letters confirms that such letters can be an effective vehicle for supplying notice to the defense as to particular murders or other violent acts that it will reference or seek to establish at trial.

[6] Such cause may include that earlier notification would seriously jeopardize the safety of victims or witnesses or that sufficient proof of the murder or violent act in question has newly been obtained.